UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEMINI MASTER FUND, LTD. AND BLACK MOUNTAIN EQUITIES, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> ELECTRONIC CIGARETTES INTERNATIONAL GROUP, LTD, <br><br> Defendant. | No. 15-cv-3378 (WHP) |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' LOCAL RULE 56.1 STATEMENT**

Pursuant to Local Civil Rule 56.1(b) of the Local Rules of the United States District Court for the Southern District of New York, Defendant Electronic Cigarettes International Group, LTD ("ECIG"), by its attorneys Robinson Brog Leinwand Greene Genovese & Gluck, P.C., submits this Response to plaintiffs Gemini Master Fund, LTD. ("Gemini") and Black Mountain Equities, Inc. ("BME") (jointly, "Plaintiffs") Local Rule 56.1 Statement in opposition to Plaintiffs motion for summary judgment:

A.  Defendant's Responses to Plaintiffs' Statement of Material Undisputed Facts

**Plaintiffs' Statement No. 1:**

As of March 5, 2015, BME held nine separate warrant agreements ("Warrants") that allowed it to purchase a total of 14,051,542 shares of ECIG. (Baker Dec. ¶ 3) The nine warrants are identical in all respects except as to the share amount. A true and correct copy of one such Warrant is annexed to the Baker Declaration as Exhibit 2.

{00756772.DOCX;1 }

1

**Defendant's Response to Plaintiffs' Statement No. 1:**

The factual assertions in Plaintiffs' Statement No. 1 are not in dispute.

**Plaintiffs' Statement No. 2:**

As of March 5, 2015, Gemini held two separate Warrants that allowed it to purchase 10,029,099 of ECIG's shares. (Winters Dec. 3)  The two Warrants are identical in all respects except as to the share amount.  A true and correct copy of one such Warrant is annexed to the Winters Declaration as Exhibit 2.

**Defendant's Response to Plaintiffs' Statement No. 2:**

The factual assertions in Plaintiffs' Statement No. 2 are not in dispute.

**Plaintiffs' Statement No. 3:**

The Warrants were originally issued by Victory Electronic Cigarettes Corporation which has subsequently changed its name to ECIG. (Winters Dec. ¶ 3; Baker Dec. ¶ 3)

**Defendant's Response to Plaintiffs' Statement No. 3:**

The factual assertions in Plaintiffs' Statement No. 3 are not in dispute.

**Plaintiffs' Statement No. 4:**

On March 5, 2015, BME delivered Notices of Exercise to ECIG, exercising on a cashless basis all of its respective Warrants.  (Baker Dec. ¶ 6; Baker Dec. Ex. 3)  The exercise price, defined in the Warrants as the "VWAP" or "Variable Weighted Average Price," was $.01814.  (Baker Dec. ¶ 6; Baker Dec. Ex. 3)  Based on a formula in the Warrants, BME was entitled to receive 12,157,606 shares.  (Baker Dec. ¶ 6)

**Defendant's Response to Plaintiffs' Statement No. 4:**

The factual assertions in Plaintiffs' Statement No. 4 are not in dispute.

**Plaintiffs' Statement No. 5:**

On March 5, 2015, Gemini delivered Notices of Exercise to ECIG, exercising on a cashless basis all of its respective Warrants. (Winters Dec. ¶ 6; Winters Dec. Ex 3) The exercise price, defined in the Warrants as the "VWAP" or "Variable Weighted Average Price," was $.01814. (Winters Decl. ¶ 6; Winters Dec. Ex. 3) Based on a formula in the Warrants, Gemini was entitled to receive 8,677,327 shares. (Winters Dec. ¶6)

**Defendant's Response to Plaintiffs' Statement No. 5:**

The factual assertions in Plaintiffs' Statement No. 5 are not in dispute.

**Plaintiffs' Statement No. 6:**

Having delivered the Notices of Exercise on March 5, the Warrant Share Delivery Date to BME was March 10. (Baker Dec. ¶ 7; Baker Dec. Ex. 2 § 2(d)(i)) On March 26, 2015, ECIG delivered shares to BME. (Baker Dec. ¶ 7; Answer ¶ 16) Eleven trading days, i.e., "a day on which the principal Trading Market is open for trading," passed between the Warrant Share Delivery Date and the actual date of delivery. (Baker Dec. ¶¶7, 8; Baker Dec. Ex. 2 § 1 "Trading Day")

**Defendant's Response to Plaintiffs' Statement No. 6:**

The factual assertions in Plaintiffs' Statement No. 6 are not in dispute.

**Plaintiffs' Statement No. 7:**

Having delivered the Notices of Exercise on March 5, the Warrant Share Delivery Date to Gemini was March 10. (Winters Dec. ¶ 7; Winters Dec. Ex. 2 § 2(d)(i))  On March 26, 2015, ECIG delivered shares to Gemini.  (Winters Dec. ¶ 7; Answer ¶ 16)  Eleven trading days, i.e., "a day on which the principal Trading Market is open for trading," passed between the Warrant Share Delivery Date and the actual date of delivery.  (Baker Dec. ¶¶7, 8; Baker Dec. Ex. 2 § 1 "Trading Day")

**Defendant's Response to Plaintiffs' Statement No. 7:**

The factual assertions in Plaintiffs' Statement No. 7 are not in dispute.

**Plaintiffs' Statement No. 8:**

BME is entitled to liquidated damages in the amount of $433,321.48 as set forth in the formula in Section 2(d)(i) of the Warrants:

> Total Liquidated Damages due BME $433,321.38
> [(14,051,543 Warrant Shares) * (VWAP of $.01814) * (5 days) * (1%)] + [(14,051,543 Warrant Shares) * (VWAP of $0.1814) * 6 (days) * (2%)] = $433,321.48

(Baker Dec. Ex. 2 § § 2(d)(i))

**Defendant's Response to Plaintiffs' Statement No. 8:**

The factual assertions in Plaintiffs' Statement No. 8 are in dispute to the extent that they: (i) conclude BME is owed liquidated damages; (ii) base the calculation of liquidated damages on BME's alleged right to receive 14,051,543 shares of ECIG's common stock (*Anderson Decl.* ¶

42); and (iii) utilize an improper VWAP from March 4, 2015. *Anderson Decl.*¶ 43; *Anderson Decl.* Ex. H.

BME is not owed liquidated damages because it cannot make out a claim for breach of contract. BME has no damages because, even if it had timely received shares after exercising its Warrants, it possessed material, nonpublic information, was under a duty of confidentiality, and had agreed not to trade its shares. Any trades made by BME prior to the public disclosure of the inside information on May 1, 2015 would have violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.A. §78j(b), and Rule 10b-5 promulgated thereunder.

Additionally, in the event that BME is entitled to collect liquidated damages, it failed to demonstrate that it was entitled to receive 14,051,543 Warrant Shares. BME admits that it was only entitled to receive 12,157,606 shares after the cashless exercise. *Baker Decl.* ¶ 6. Nonetheless, BME improperly calculates its damages on the gross shares contained in the Warrants. *Id.* at ¶ 8.

Furthermore, BME employs an improper VWAP. The Warrants' liquidated damages provision dictates that the holder shall calculate his damages based on the VWAP on the date of exercise, not the day before exercise. *Baker Decl.* Ex. 2 ¶ 2(d)(i). In this case, the VWAP on the date of exercise, March 5, 2015, after application of a 15:1 reverse split, was $.13564. *Anderson Decl.* ¶ 47.

**Plaintiffs' Statement No. 9:**

Gemini is entitled to liquidated damages in the amount of $390,277.36 as set forth in the formula in Section 2(d)(i) of the Warrants:

Total Liquidated Damages due Gemini $390,277.36
[(10,029,099 Warrant Shares) * (VWAP of $.01814) * (5 days) *
(1%)] + [(10,029,099 Warrant Shares) * (VWAP of $0.1814) *
6 (days) * (2%)] = $390,277.36

**Defendant's Response to Plaintiffs' Statement No. 9:**

The factual assertions in Plaintiffs' Statement No. 9 are in dispute to the extent that they: (i) conclude Gemini is owed liquidated damages; (ii) base the calculation of liquidated damages on Gemini's alleged right to receive 10,029,099 shares of ECIG's common stock (*Anderson Decl.* ¶ 42); and (iii) utilize an improper VWAP from March 4, 2015. *Anderson Decl.* ¶ 43; *Anderson Decl.* Ex. H.

Gemini is not owed liquidated damages because it cannot make out a claim for breach of contract. Gemini has no damages because, even if it had timely receive shares after exercising its Warrants, it possessed material, nonpublic information, was under a duty of confidentiality, and had agreed not to trade its shares. Any trades made by Gemini prior to the public disclosure of the inside information on May 1, 2015 would have violated Section 10(b) of the Exchange Act, 15 U.S.C.A. §78j(b), and Rule 10b-5 promulgated thereunder.

Additionally, in the event that Gemini is entitled to collect liquidated damages, it failed to demonstrate that it was entitled to receive 10,029,099 Warrant Shares. Gemini admits that it was only entitled to receive 8,677,237 shares after the cashless exercise. *Winters Decl.* ¶ 6. Nonetheless, Gemini improperly calculates its damages on the gross shares contained in the Warrants. *Id.* at ¶ 8.

Furthermore, Gemini employs an improper VWAP. The Warrants' liquidated damages provision dictates that the holder shall calculate his damages based on the VWAP on the date of exercise, not the day before exercise. *Winters Decl.* Ex. 2 ¶ 2(d)(i). In this case, the VWAP on

{00756772.DOCX;1 }

the date of exercise, March 5, 2015, after application of a 15:1 reverse split, was $.13564. *Anderson Decl.* ¶ 47.

B.    **Defendants' Counter Statement of Disputed Material Facts.**

**Defendant's Statement No. 1:**

ECIG asserts Winters and Baker, on behalf of Plaintiffs, engaged in a telephone call with ECIG's CFO, Phil Anderson ("Anderson"), which lasted for approximately thirty minutes (the "Call"). *Anderson Decl.* ¶ 20(a); *Anderson Decl.* Ex. D. Plaintiffs contend that the Call lasted between two and twelve minutes. *Declaration of Lawrence S. Hirsh* ("*Hirsh Decl.*") Ex. A at 33:25-34:3-9; *Hirsh Decl.* Ex. B at 34:12-15.

**Defendant's Statement No. 2:**

ECIG asserts the Call concerned various topics with the overall purpose being Plaintiffs' performance of due diligence before purchasing the Warrants. *Anderson Decl.* ¶ 19. Plaintiffs contend that the sole purpose of the call was to ask ECIG to reissue the Warrants in Plaintiffs' name. *Hirsh Decl.* Ex. A at 31:15-25; *Hirsh Decl.* Ex. B at 34:16-22.

**Defendant's Statement No. 3:**

ECIG asserts that during the Call, Anderson asked Plaintiffs whether they would consider amending their Warrants to remove the "ratchet" and other anti-dilution provisions in consideration of a perpetual cashless exercise. *Anderson Decl.* ¶ 22. Winters claims he does not recall this conversation, *Hirsh Decl.* Ex. A at 34:23-354, as does Baker. *Hirsh Decl.* Ex. B at 39:16-20.

**Defendant's Statement No. 4:**

ECIG asserts Winters inquired when a proposed reverse stock split and an authorization of an additional 50 million shares would be complete.  *Anderson Decl.* ¶ 23.  ECIG further asserts that, as a result of Winters' inquiry, Anderson informed him that approval of the reverse split and additional authorization of shares was ongoing and ECIG could not meet the terms of the Warrants until those measures were approved.  *Id.*  Winters claims Anderson never mentioned ECIG's inability to fulfill the terms of the warrants.  *Hirsh Decl.* Ex. A at 39:3-16.  Baker claim he has no recollection of this discussion.  *Hirsh Decl.* Ex. B at 40:18-22.

**Defendant's Statement No. 5:**

ECIG asserts Winters informed Anderson that ECIG's inability to fulfill the terms of the Warrants was irrelevant because Gemini and BME intended to hold the Warrants and only trade on the Warrants' volatility.  *Anderson Decl.* ¶ 24.  Winters claims he does not recall any discussion of volatility.  *Hirsh Decl.* Ex A at 40:21-24.  Baker denied that any statements with respect to trading on volatility were ever made.  *Hirsh Decl.* Ex. B at 40:14-17.

**Defendant's Statement No. 6:**

ECIG asserts Anderson and Plaintiffs understood Winters' statements concerning Plaintiffs' intent to hold the Warrants and merely trade on volatility to be an agreement not to trade ECIG's common stock.  *Anderson Decl.* ¶ 30.  Plaintiffs claim they had no duty of to refrain from training. Plaintiffs' Brief at 12-14.

**Defendant's Statement No. 7:**

ECIG asserts that, during the Call, Winters asked Anderson about the possibility of purchasing ECIG's senior secured debt and making additional capital investments in ECIG. *Anderson Decl.* ¶¶ 25-27. Baker claims he does not recall any inquiry into the possibility of additional investments. *Hirsh Decl.* Ex. B at 40-18-22.

**Defendant's Statement No. 8:**

ECIG asserts that, during the Call, in response to Winters' inquiry regarding opportunities to make additional investments in ECIG, Anderson informed Plaintiffs that ample investment opportunities were available because ECIG was currently negotiating a large recapitalization that would involve a senior secured loan generating 12% interest, payable in cash to the investors, and that any warrant coverage to be provided to the investors was still to be determined (the "Recapitalization"). *Anderson Decl.* ¶ 26-27. Winters claims that none of the terms of the Recapitalization were ever discussed. *Hirsh Decl.* Ex. A at 41:21-24. Baker claims he has no recollection of any discussion of the Recapitalization. *Hirsh Decl.* Ex. B at 46:9-12.

**Defendant's Statement No. 9:**

ECIG asserts Plaintiffs were brought "over the wall" when they learned of the Recapitalization and therefore acquired a duty of confidentiality and a duty to refrain from trading based on their statements that they intended to hold the Warrants and trade on volatility. *Anderson Decl.* ¶¶ 27-30. Plaintiffs argue they had neither a duty of confidentiality nor a duty to refrain from trading. Plaintiffs' Brief at 12-14.

**Defendant's Statement No. 10:**

{00756772.DOCX;1 }

9

ECIG asserts liquidated damages, if any, should be calculated on the net number of shares that Plaintiffs were entitled to receive after the cashless exercise. *Anderson Decl.* ¶ 42. In particular, ECIG asserts that BME is only entitled to liquidated damages on the 12,157,606 shares it was actually entitled to receive. *Id.* BME contends it is entitled to liquidated damages on the gross number of shares subject to exercise under the Warrants, or 14,051,543 shares. *Baker Decl.* ¶ 8.

**Defendant's Statement No. 11:**

ECIG asserts liquidated damages, if any, should be calculated on the net number of shares that Plaintiffs were entitled to receive after the cashless exercise. *Anderson Decl.* ¶ 42. In particular, ECIG asserts that Gemini is only entitled to liquidated damages on the 8,677,327 it was actually entitled to receive. *Id.* Gemini contends it is entitled to liquidated damages on the gross number of shares subject to exercise under the Warrants, or 10,029,099 shares. *Winters Decl.* ¶ 8.

**Defendant's Statement No. 11:**

ECIG asserts that the correct VWAP for calculating Plaintiffs' liquidated damages, if any, is $.13564 as of the date of exercise, March 5, 2015. *Anderson Decl.* ¶¶ 46-47; *Anderson Decl.* Ex. I. Plaintiffs contend that the appropriate VWAP is $.1814, as of the date before exercise, March 4, 2015. *Winters Decl.* ¶¶ 6-7; Ex. 3. *Baker Decl.* ¶¶ 6-7; Ex. 3.

Dated: New York, New York
October 21, 2015

                                        ROBINSON BROG LEINWAND
                                        GREENE GENOVESE & GLUCK, P.C.

                                        By: /s/ Lawrence S. Hirsh
                                              Lawrence S. Hirsh